OPINION
{¶ 1} Defendant-appellant, Harvey Wells, appeals his conviction in the Butler County Court of Common Pleas for grand theft in violation of R.C. 2913.02(A)(1). We affirm.
 {¶ 2} Appellant was indicted on one count of breaking and entering in violation of R.C. 2911.13(A), a fifth-degree felony, and one count of grand theft, a fourth-degree felony.
 {¶ 3} At trial, the state presented the testimony of Elizabeth Williams who, on June 10, 2004, at approximately 5:30 a.m., was getting ready for work at her apartment on Sal Boulevard in Trenton, Ohio, when she heard a "clanging" sound outside of her apartment. Williams looked out of her window to investigate the noise and noticed a man leaning against her garage. However, she stated that she was unable to see the man's face because his back was toward her. Williams finished getting ready for work, picked up her cellular phone, and then returned to the window. This time, the man was leaning against a neighbor's car.
 {¶ 4} While Williams was looking out the window, someone turned on an outdoor faucet that was approximately two feet from where she stood. Williams also heard a voice in the distance. She looked out of the window a third time and witnessed two people "rounding off the side of the garage." Williams waited a few minutes, then left her house for work. On her way out, she inspected her garage. Nothing was missing, but she testified that she was surprised to see extra "stuff," consisting of ten to 12 pieces of donut-shaped metal that she did not own, in her garage. She then got into her car and called the police.
 {¶ 5} The state also presented the testimony of Trenton Police Officer Scott Johnson, who responded to Williams' address at approximately 5:40 a.m. As he pulled into the apartment area, he encountered two men, appellant and David Robinson. Both men were dirty and wet and apparently intoxicated. Appellant's pants were soaking wet below the knees and had white buds on them. Robinson's white shirt was covered with a grayish metallic substance which, according to Officer Johnson, appeared to be casting dust. Robinson's socks and shoes were covered with a very dark black soil. When asked about his appearance, Robinson informed Officer Johnson that he had passed out on the railroad tracks near Magnode, a nearby aluminum founding and casting plant, and that his buddy had come and awakened him.
 {¶ 6} After learning appellant's identity, Officer Johnson was informed that appellant had an outstanding warrant issued by Butler County. Appellant was arrested for the warrant and for public intoxication. Officer Johnson then asked Robinson, who had informed the officer that he would walk home, whether he could complete the walk. Robinson became loud and obnoxious with Officer Johnson and was placed under arrest for disorderly conduct.
 {¶ 7} Williams further testified that, after returning from work at approximately 8 a.m., she saw that the extra "stuff" was still in her garage and called the police. Officer Johnson, now accompanied by Detective Joseph Zianno, returned to Williams' garage and discovered aluminum castings and machine parts, covered in metallic dust, inside a Rubbermaid plastic bin and a laundry basket. Officer Johnson contacted Magnode to determine if the parts belonged to the company. Joseph Bidwell, Magnode's vice-president of manufacturing, testified that the parts were company property that had been stored outside the factory. Bidwell also testified that it would cost Magnode over $12,000 to replace the stolen items.
 {¶ 8} Detective Zianno testified that he examined the route from Williams' garage to Magnode. The garage was approximately one-eighth of a mile from the business. Detective Zianno observed that tall grass on the path was wet from an earlier rain shower and also matted down where someone had placed large, heavy objects on the ground. After crossing the railroad tracks, he noted that the pitch-black soil had drag marks in it that led up a hill to the back of Magnode's property. The drag marks were the same width as the Rubbermaid bin found in Williams' garage, and the bin had grass, dirt, and scratches on the bottom as if it had been dragged through the soil.
 {¶ 9} At the top of the hill, Magnode's barbed wire fence was bent down at the top and the ground was again matted down. Detective Zianno also found a blue jacket with the name patch "David" on it near the fence. A gate, surrounded by grass that had been matted down, stood on Magnode's property next to a retaining pond. Magnode's storage lot, furnace complex, and fabrication buildings were accessible through this gate, as were the castings and machine parts. Officer Johnson, after retracing the route from Magnode to Williams' garage, noticed the same white buds on his pants that he had observed on appellant's pants.
 {¶ 10} A jury found appellant not guilty of breaking and entering, but guilty of grand theft and appellant was sentenced to 12 months in prison. Appellant now appeals his conviction and sentence, raising the following assignments of error:
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "The state presented insufficient evidence to convict Mr. Wells of theft in violation of R.C. 2913.02(A)(1)."
 {¶ 13} In appellant's first assignment of error, he argues that there was insufficient evidence to support his conviction for grand theft. We disagree.
 {¶ 14} In reviewing the sufficiency of the evidence, an appellate court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks, (1991),61 Ohio St.3d 259, paragraph two of the syllabus. The trial court's decision "will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273.
 {¶ 15} Appellant was charged with violating R.C.2913.02(A)(1), which defines grand theft, in pertinent part, as follows: "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"
 {¶ 16} Appellant specifically challenges whether the state demonstrated that he had control of the aluminum castings. He essentially points out the state's lack of direct evidence linking him to the crime. Williams was unable to identify appellant as the man in her garage; no individuals witnessed him on Magnode property; and the police did not take fingerprints from the stolen property. Appellant also cites Officer Johnson's testimony that it would not have been possible for appellant to walk from Magnode to Sal Boulevard in the three minutes it took for the officer to arrive after being dispatched at 5:40. As a result, appellant maintains that he could not have possibly been in control of the stolen property or committed the crime during the established time frame.
 {¶ 17} In State v. Jenks, the Ohio Supreme Court held that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." Jenks,61 Ohio St.3d at 272. Furthermore, a conviction based solely on circumstantial evidence is no less sound than one based on direct evidence. State v. Begley (Dec. 21, 1992), Butler App. No. CA92-05-076, at 5.
 {¶ 18} Although the evidence presented at trial did not directly implicate appellant, the overwhelming amount of circumstantial evidence could convince the average mind of appellant's guilt beyond a reasonable doubt. The trier of fact could reasonably infer that appellant's pants were wet and covered in buds and his socks covered in dark soil from traversing the path between Williams' garage and Magnode. Additionally, Robinson's shirt was covered in what Officer Johnson termed casting dust. A jacket with a name patch bearing the name "David," Robinson's first name, was found near Magnode's fence.
 {¶ 19} The Rubbermaid and laundry bins in Williams' garage contained Magnode property coated in a dust similar to the dust on Robinson's shirt. The Rubbermaid bin was also covered in dirt, scratches, and grass as if it had been dragged. Drag marks along the path between Magnode and Williams' garage were the same size as the Rubbermaid bin.
 {¶ 20} Finally, we find no merit to appellant's contention that the crime could have not been completed during the established time frame. Williams testified on direct examination that ten to 12 casting parts were present in her garage prior to leaving work. However, she later stated that she observed some stolen property in her garage prior to leaving for work but that more appeared later. Joseph Bidwell testified that he identified approximately 35 molds. Even if appellant is correct in his assertion that it would have been impossible for appellant and Robinson to traverse the path between Magnode and Williams' garage in three minutes, it would not have been impossible to move items into the garage that had already been brought to the area.
 {¶ 21} Although the evidence against the appellant was circumstantial, the totality of the circumstances could lead a reasonable mind to conclude that appellant exerted control over the property. We find there was sufficient evidence to support appellant's conviction for grand theft. The first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "Mr. wells' conviction was against the manifest weight of the evidence."
 {¶ 24} Appellant argues in his second assignment of error that his conviction for grand theft was against the manifest weight of the evidence.
 {¶ 25} When reviewing whether a conviction is supported by the manifest weight of the evidence, the appellate court, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 26} An appellate court will not reverse a judgment in a jury trial as being against the manifest weight of the evidence unless it unanimously disagrees with the judgment of the trial court. Id. at 389. When reviewing the evidence, an appellate court must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 27} Appellant again argues that the evidence against him was circumstantial. However, after reviewing the record and for the reasons previously stated, we cannot say that the jury lost its way and created a manifest miscarriage of justice when it found appellant was guilty of grand theft. The conviction was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
 {¶ 28} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.